UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RON MCKIE,

        Plaintiff,                                  Hon. Janet T. Neff

v.                                                  Case No. 1:17-cv-776

VAN BUREN, COUNTY OF, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 57). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part** as detailed herein.

## BACKGROUND

        The following allegations are contained in Plaintiff's amended complaint. (ECF No. 45). On June 28, 2015, Plaintiff was processed into the custody of the Van Buren County Jail. Because Plaintiff suffered from epilepsy, a member of the jail's medical staff completed a "medical form" stating that it was "medically necessary [that Plaintiff] be assigned to a bottom bunk." On or about October 9, 2015, Shawn Ampey transferred Plaintiff to a cell in a different section of the jail in which there was no available bottom bunk. When Plaintiff informed Ampey that he required a bottom bunk and anti-seizure medication, Ampey simply told Plaintiff to "deal with it."

        Between October 9, 2015, and October 12, 2015, Plaintiff "made multiple requests" to jail personnel that he be reassigned to a bottom bunk and be provided his anti-seizure medication.

Plaintiff's requests were disregarded. On October 12, 2015, Plaintiff suffered a seizure and fell from his top bunk suffering a broken nose, cracked eye socket, broken shoulder, and a head injury. Plaintiff was transported to a hospital for treatment. While Plaintiff was at the hospital, Manny Delarosa approached Plaintiff and told him that his sentence "would be suspended if [he] did not press the issue." Joshua Griffith subsequently contacted a county judge who suspended the remainder of Plaintiff's sentence.

Plaintiff initiated this action on April 24, 2017, against Joshua Griffith, Manny Delarosa, Al Boyer, Shawn Ampey, Andrea Skidmore, and Van Buren County. Plaintiff asserts five causes of action: (1) violation of his Eighth Amendment right to receive adequate medical care; (2) violation of his Eighth Amendment right to not be housed in inhumane conditions; (3) municipal liability; (4) violation of his Fourteenth Amendment right to receive adequate medical care; and (5) gross negligence. Defendants now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.        **Fourteenth Amendment**   (Count IV)

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of his Fourteenth Amendment rights. Plaintiff's right to be free from cruel and unusual punishment is protected by the Eighth Amendment whereas the Fourteenth Amendment's analogous protections apply to pretrial detainees. *See, e.g., Bradley v. City of Ferndale*, 148 Fed. Appx. 499, 506 (6th Cir., Sept. 8, 2005). Plaintiff has not alleged that he was a pre-trial detainee, rather the parties do not dispute that Plaintiff was serving a sentence following a criminal conviction. Accordingly, the undersigned recommends that, Plaintiff's Fourteenth Amendment claims for denial of medical treatment be dismissed.

II.        **Eighth Amendment – Denial of Medical Treatment**   (Count I)

Plaintiff alleges that between October 9, 2015, and October 12, 2015, he "made multiple requests" to Defendants that he be reassigned to a bottom bunk and be provided his anti-seizure medication. Plaintiff alleges that these requests were disregarded in violation of his Eighth Amendment rights. The parties do not dispute that on October 9, 2015, Plaintiff was transferred to a different cell where he remained until October 12, 2015, the date on which he suffered a seizure which required that he be transported to a hospital for treatment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

Defendants assert that they are entitled to summary judgment because: (1) Plaintiff's alleged medical condition was not sufficiently serious to implicate the Eighth Amendment, and (2) Defendants were not aware that Plaintiff was experiencing a medical condition requiring treatment. Interpreting the relevant evidence in a manner most favorable to Plaintiff reveals the following.

1.  Objective Element

Plaintiff was diagnosed with epilepsy in 2005 and prescribed medication. (ECF No. 66, Exhibit A at PageID.330, 340). As of June 28, 2015, the date Plaintiff was processed into the Van Buren County Jail, he still suffered from epilepsy for which he daily takes prescribed medication. (ECF No. 66, Exhibit A at PageID.344, 354). Plaintiff's epilepsy is sufficiently serious that he suffers seizures if he does not take his prescribed medication. (ECF No. 66, Exhibit A at PageID.340-41). Edie Reynolds, a medical assistant at the Van Buren County Jail, testified that epilepsy is a "significant" medical problem and characterized Plaintiff's epilepsy medication as a "life sustaining" drug. (ECF No. 66, Exhibit F at PageID.421, 423, 427). Judy Mitchelson, a Physician's Assistant who works at the Van Buren County Jail, characterized Plaintiff's epilepsy medication as a "life sustaining" drug. (ECF No. 66, Exhibit G at PageID.433, 442-43). Roslyn Hickmott, the supervising nurse at the Van Buren County Jail, testified that epilepsy constitutes a "significant" medical condition. (ECF No. 66, Exhibit H at PageID.448, 450). In sum, Defendants have failed to demonstrate the absence of a genuine factual dispute as to this element.

2.  Subjective Element

Defendants argue that they are entitled to relief because they "were unaware of the Plaintiff's purported need for the allegedly missed medication doses or of any serious risks to Plaintiff's health if doses were missed." Defendants further argue that "Plaintiff does not specifically

identify who supposedly denied his medications or refused him a bottom bunk." As discussed below, the evidence, interpreted in Plaintiff's favor, compels the conclusion that summary judgment be granted to Defendants Ampey and Skidmore, but denied as to Defendants Griffith, Delarosa, and Boyer.

When Plaintiff was initially processed into the Van Buren County Jail, a medical assistant completed a "Medical Form" indicating that Plaintiff was to be provided a permanent bottom bunk accommodation because he suffered "seizures." (ECF No. 66 at PageID.422, 513). This form was placed in Plaintiff's "jail file" which was accessible to any corrections officer at the jail. (ECF No. 66 at PageID.461-62). An "Inmate Alert Card" was also completed which indicated that Plaintiff suffered from a disorder[1] for which he was prescribed Lamictal. (ECF No. 66 at PageID.461, 511). The Inmate Alert Cards are maintained in the section of the jail in which the inmate is housed and are accessible to any corrections officer at the jail. (Griffith 10-14, Jorriy 15-17).

At his deposition, Plaintiff testified that after being transferred to a different section of the jail on October 9, 2015, he repeatedly asked to receive his anti-seizure medication and be provided with a bottom bunk. When Plaintiff was asked to specifically identify the individuals to whom he made these requests, Plaintiff identified Defendants Griffith, Delarosa, and Boyer. (ECF No. 66 at PageID.347). While Plaintiff asserted that he requested assistance from "every officer on every single day," he was unable to specifically identify any other individual from whom he requested assistance. (ECF No. 66 at PageID.344-50).

---

[1] This card identified Plaintiff's impairment by a number which corresponded to a chart maintained by the jail, but the official who completed the form wrote the number corresponding to a heart condition rather than the number corresponding to seizures. (ECF No. 66 at PageID.461).

While it may not be unreasonable to assume that Defendants Ampey and Skidmore were on duty during the time period in question and, therefore, were approached by Plaintiff for assistance, assumptions are insufficient to satisfy the subjective element of an Eighth Amendment claim. Instead, Plaintiff must present evidence establishing, or from which it can be inferred, that Defendants were subjectively aware that Plaintiff was at risk of serious harm and failed to act reasonably in response thereto. With respect to Defendants Ampey and Skidmore, Plaintiff has presented no such evidence. Plaintiff was unable to identify them in his deposition as having disregarded his requests for assistance. Plaintiff has not presented evidence from which it can be inferred that Defendants Ampey or Skidmore were one of the other unidentified officials from whom he allegedly requested assistance. Plaintiff has not established that Defendants Ampey or Skidmore were specifically instructed about Plaintiff's situation or otherwise instructed to monitor him. Plaintiff has also failed to demonstrate that, prior to suffering a seizure on October 12, 2015, he exhibited any symptoms or manifestations which should have altered Defendants Ampey or Skidmore that he was at danger of suffering a seizure. In sum, Plaintiff has failed to present evidence sufficient to establish that Defendants Ampey and Skidmore possessed a sufficiently culpable state of mind to hold them liable under the Eighth Amendment for the events in question.

With respect to Defendants Griffith, Delarosa, and Boyer, however, the Court reaches a different conclusion. Plaintiff testified that he specifically requested from each of these Defendants that he be provided his anti-seizure medication and be given a bottom bunk, treatment which the jail's medical staff already determined Plaintiff required. As is well recognized, "if a prisoner asks for and needs medical care, it must be supplied." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). That Plaintiff needed medical care is established by the fact that the jail's own medical staff directed

jail staff to provide Plaintiff with a bottom bunk and anti-seizure medication. This prescription was communicated to Defendants as described above. That Plaintiff requested that he be provided the care ordered by the jail's medical staff is established by his testimony. Moreover, this is not a circumstance in which Plaintiff is expecting Defendants to have usurped the medical staff's role and *diagnose* his condition and determine what, if any, treatment was appropriate. Instead, Plaintiff simply requested that these Defendants provide him with the specific care the jail's medical staff previously ordered he be provided. In sum, Plaintiff has presented evidence from which a reasonable juror could conclude that Defendants Griffith, Delarosa, and Boyer knew that Plaintiff was at risk of serious harm and failed to act reasonably in response thereto.

Accordingly, with respect to Plaintiff's Eighth Amendment denial of medical treatment claim, the undersigned recommends that Defendants Ampey and Skidmore are entitled to summary judgment and, furthermore, that Defendants Griffith, Delarosa, and Boyer are not entitled to summary judgment. Furthermore, the undersigned recommends that Defendants Griffith, Delarosa, and Boyer are not entitled to qualified immunity as to this claim because it was clearly established as of October 12, 2015, that denial by a jail official of an inmate's request for medical care which the jail previously prescribed violates the Eighth Amendment. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

**III.        Eighth Amendment – Conditions of Confinement**   (Count II)

Plaintiff alleges that Defendants incarcerated him in conditions which violated his Eighth Amendment rights. Defendants argue that this claim is redundant to Plaintiff's Eighth Amendment denial of medical treatment claim and must, therefore, be dismissed. Plaintiff has failed to respond to Defendants' argument.

An Eighth Amendment conditions of confinement claim is analyzed similarly to a denial of medical treatment claim. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. With respect to the objective prong, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)).

If the objective test is met, the Court must then determine whether Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the individual deliberately indifferent to inmate health or safety. *Ibid.* However, the Eighth Amendment is not implicated where prison officials simply acted with negligence. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006). In sum, to establish that Defendants acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294.

The Court disagrees with Defendants that the assertion of a denial of medical treatment claim precludes the assertion of a conditions of confinement claim. For example, consider a circumstance in which a man is incarcerated, in January, in a Michigan jail lacking heat. As a result of being confined in such conditions, the man develops pneumonia requiring medical treatment which is denied. In this circumstance, the man would have both a viable conditions of confinement claim

and a denial of medical treatment claim. Defendants have identified no authority standing for the proposition that assertion of one claim precludes assertion of the other. The shortcoming with Plaintiff's conditions of confinement claim is not that he is precluded from asserting such, but rather that he has failed to present evidence sufficient to defeat summary judgment.

Plaintiff alleges that the conditions under which he was confined during the time period in question violated the Eighth Amendment. Plaintiff has failed to respond to Defendant's argument and, therefore, has failed to identify evidence from which a reasonable person could conclude that he experienced "extreme deprivations" which deprived him of the "minimal civilized measure of life's necessities." Moreover, the Court discerns no such evidence in the current record. With respect to this claim, Plaintiff has established at most that Defendants exhibited negligence which does not implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment as to this claim.

**IV.**     **Municipal Liability**   (Count III)

Invoking 42 U.S.C. § 1983, Plaintiff seeks to hold Van Buren County liable for violating his Eighth Amendment rights. Specifically, Plaintiff contends that the violation of his rights was caused by Van Buren County's failure to properly train Defendants.

Section 1983 is the means by which "persons" who violate the constitutional rights of others can be held accountable. *See* 42 U.S.C. § 1983. While "municipalities and other local governmental bodies" are considered "persons" under § 1983, Defendant cannot be held liable under § 1983 solely because it employs a tortfeasor. *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997). To impose liability on Van Buren County, Plaintiff must establish that he suffered a constitutional injury as a result of "official municipal policy."

*Connick v. Thompson*, 563 U.S. 51, 60 (2011).  Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at 61.  While a local government's decision not to train its employees regarding their legal duty to avoid violating individual's rights "may rise to the level of an official governmental policy for purposes of § 1983," a municipality's culpability for a deprivation of rights "is at its most tenuous where a claim turns on a failure to train." *Ibid.*

To prevail on his claim, Plaintiff must demonstrate that Defendant's failure to train its employees constitutes "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Ibid.*  Because liability, under § 1983, for failure to train constitutes a finding that a municipality "decided to violate the Constitution," the law imposes a "strict standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown v. Battle Creek Police Department*, 844 F.3d 556, 573 (6th Cir. 2016) (citation omitted).  This standard can be satisfied in either of two ways: (1) by demonstrating there exists a pattern of similar constitutional violations by untrained employees, or (2) by demonstrating "a single violation of federal rights accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential" for constitutional violation. *Shadrick v. Hopkins County, Ky.*, 805 F.3d 724, 739 (6th Cir. 2015) (citation omitted).

The evidence viewed in a light most favorable to Plaintiff reveals the following.  As previously noted, Plaintiff was initially housed in one section of the jail and later transferred to a different section therein.  Following this transfer, Plaintiff was not provided a bottom bunk detail as jail medical staff had previously prescribed.  Plaintiff was also not provided his anti-seizure

medication as jail medical staff had previously prescribed.  After being deprived of his medication for three days, Plaintiff suffered a seizure and fell off his top bunk resulting in serious injury.

The jail has no formal policy regarding the transfer of an inmate's medications or records, including any instructions regarding his medical care, when an inmate is moved from one floor of the jail to another.  (ECF No. 66 at PageID.370, 388-89, 406, 462).  Instead, jail personnel simply "hope" that the transferred inmate's records are transported to their new location.  (ECF No. 66 at PageID.370).  As one jail official testified, the transfer of an inmate's medication and records simply "happens when it happens."  (ECF No. 66 at PageID.473-74).

The jail dispenses medication to inmates by making an announcement via the jail's intercom system instructing a particular inmate to exit his cell and walk to a designated location to receive his medication.  (ECF No. 66 at PageID.343, 397-98).  After this announcement is made, the inmate's cell door is unlocked remotely.  (ECF No. 66 at PageID.343, 397-98).  Following his October 9, 2015 transfer, Plaintiff did not hear his name being called over the intercom system to receive his medication and his subsequent requests to jail personnel to provide him his medication (as well as his bottom bunk accommodation) were ignored.  (ECF No. 66 at PageID.344-50, 357-58).

The jail has no formal policy instructing personnel how to respond when an inmate fails to show up to receive his medication.  (ECF No. 66 at PageID.370, 376, 398-99, 407-08, 451).  In such a circumstance, jail personnel mark the inmate's medical chart with an "R."  (ECF No. 66 at PageID.363, 393, 451, 459, 499-500).  However, the "R" stands for "refusal" and is the same notation made when an inmate actually refuses his medication.  (ECF No. 66 at PageID.363, 393, 398, 451, 459, 499-500).  In the absence of a formal policy regarding what to do when an inmate fails to appear to receive his medication, jail personnel follow an informal practice of allowing an inmate to not

receive his medication for as many as five days before notifying jail medical staff. (ECF No. 66 at PageID.363, 376, 399, 407-08, 440). While this may not present serious medical risks in certain cases, jail personnel do not receive training to enable them to make reasonable distinctions in these circumstances. (ECF No. 66 at PageID.363, 376, 382-83, 425, 440, 443, 498).

Thus, assume a circumstance in which a jail employee reviews an inmate's medical chart and sees an "R" indicating that the inmate did not receive his medication on a particular day. As a direct result of the jail's failure to train, the person reviewing the medical chart could not determine with any certainty whether: (1) the inmate *refused* his medication or was simply unaware that his medication had been offered; and (2) whether the failure by the inmate to receive his medication represented a significant risk to safety of the inmate or others.

Defendant has cited to no evidence in support of its motion for summary judgment. (ECF No. 58 at PageID.208-12). The Court interprets this as advancing the argument that Plaintiff simply cannot present evidence sufficient to defeat summary judgment. As the discussion above reveals, however, this is not the case. A reasonable juror could conclude from these facts that Defendant's failure to train its employees created a circumstance in which the violation of an inmate's constitutional rights was simply inevitable. Thus, a reasonable juror could conclude from these facts that the County was deliberately indifferent to Plaintiff's constitutional rights and caused the constitutional injury giving rise to this action. Accordingly, the undersigned recommends that Defendant Van Buren County's motion for summary judgment be denied.

**V.**     **Gross Negligence**  (Count V)

Finally, Plaintiff alleges that Defendants' conduct amounts to gross negligence as defined by Michigan law. Under Michigan law, gross negligence "is not an independent cause of

action," but is rather a prerequisite which a plaintiff must establish when seeking to overcome a defendant's assertion of governmental immunity. *See Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011). Plaintiff has not asserted any state law tort claims, however. Thus, there is no basis for Defendants to assert Michigan tort immunity. Accordingly, the undersigned recommends that with respect to Plaintiff's gross negligence claims, Defendants are entitled to summary judgment.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (ECF No. 57), be **granted in part and denied in part**. Specifically, the undersigned recommends that Defendants' motion be granted except with respect to: (1) Plaintiff's Eighth Amendment denial of medical treatment claims against Defendants Griffith, Delarosa, and Boyer; and (2) Plaintiff's municipal liability claim against Defendant Van Buren County.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: May 17, 2019

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge